**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

PAUL D. EDWARDS,

     Defendant - Appellant.

No. 14-5083

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:13-CR-00219-GKF-1)**
_____

Trevor L. Reynolds, Tulsa Law Group, P.C., Tulsa, Oklahoma, for Defendant - Appellant.

Leena Alam, Assistant United States Attorney (Danny C. Williams, Sr., United States Attorney; and Jeffrey A. Gallant, Assistant United States Attorney, Assistant United States Attorney, with her on the brief), Tulsa, Oklahoma, for Plaintiff - Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **GORSUCH** and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

## I. INTRODUCTION

Defendant Paul D. Edwards entered a conditional guilty plea to possession of child

pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2), thereby

reserving the right to appeal the denial of his motion to suppress thousands of images and videos of child pornography recovered at his home pursuant to a search warrant. The district court sentenced Mr. Edwards to sixty-three months in prison followed by seven years of supervised release. Mr. Edwards now appeals the denial of his motion to suppress, claiming the affidavit underlying the search warrant lacked sufficient indicia of probable cause, and no reasonable officer could in good faith rely on the search warrant as issued. Exercising our jurisdiction pursuant to 28 U.S.C. § 1291, we hold the search-warrant affidavit failed to establish probable cause that child pornography would be found at Mr. Edwards's home, but we affirm the district court's denial of the motion to suppress based on the good-faith exception to the exclusionary rule.

## II.    BACKGROUND

### A.  *The Search-Warrant Affidavit*

Task Force Officer Chris Cornwell, a seven-year veteran Deputy with the Tulsa County Sheriff's Office who had been assigned to Homeland Security Investigations for one year, drafted the search-warrant affidavit provided to the reviewing magistrate judge. The affidavit indicated that in 2011, Homeland Security agents began investigating users of an internationally hosted website that allows individuals to upload photographs and post comments. Agents created covert accounts on the website to track individuals suspected of child exploitation. In the course of their investigation, agents identified Mr. Edwards as a user who had uploaded suspicious, in some cases sexually suggestive, images of an approximately ten-year-old girl who was known to the investigations team

2

from other photographs circulating on the internet. Search Warrant Aff. 18, ¶ 36 (Dkt. No. 23, Ex. A).[1]

Mr. Edwards participated in the website under the screenname "legsluv802" with an associated email address. Log files revealed that this email address—and corresponding user profile—was used to log in from an IP address associated with Mr. Edwards at his home street address. Agents accessed Mr. Edwards's profile and found he had posted hundreds of images to the website, all depicting the same blond-haired, prepubescent girl. The 22-page affidavit alleged, in pertinent part, the following:

- Mr. Edwards shared 715 images in 28 albums of the same prepubescent girl, in some cases clothed and in others only scantily clad, in various suggestive poses on the website. *Id.* at 18–20, ¶¶ 37–41.

- Viewers of these images left disturbing comments indicating they were sexually attracted to the girl in the images, and Mr. Edwards left supportive responses, some of which suggested he was also sexually attracted to the girl.[2] *Id.* at 18–20, ¶¶ 38–42.

_____

[1] All references to district court docket numbers will be in the format "Dkt. No. __" and refer to the district court filings in this case.

[2] For example, in response to a user comment, "Perfect little booty," Mr. Edwards stated, "Glad you like her"; in response to a user comment "hot hot hot," Mr. Edwards stated, "Thanks, I agree"; in response to a user comment, "sexy!! Is she yours?," Mr. Edwards commented, "No, wish she was though"; in response to a user comment, "OMG! What's not to like?? She is yummy," Mr. Edwards commented, "I agree she is yummy"; and in response to the comment, "Sexy picture, great shape to her ass," Mr. Edwards commented, "this is one of my favorite pics of the album, thanks." The affidavit also included reference to disturbing comments by other users to which Mr. Edwards had not directly responded, such as "great album, it's hard to keep my comments clean with this hard thing in my hand" and "I love her, I just wish I could see some camel toe, that would send me over the edge." Search Warrant Aff. 18–20, ¶¶ 37–42 (Dkt. No. 23, Ex. A).

3

- One photograph showed the girl lying on the floor leaning on her arm and wearing "a pink and blue patterned leotard and sheer ballet skirt." The image was "focused on the child's genital area," and her legs were crossed at the ankles. *Id.* at 18, ¶ 38.

- One album contained 17 photographs with the girl wearing shiny red underwear, a red dress that was open down the front, and a red and white hat. One picture in that album depicted her "sitting with her legs spread apart" and smiling at the camera, although the affidavit does not allege that this photograph focused on the genital area. *Id.* at 19, ¶ 39.

- Another album contained 25 images showing the girl dressed in what appeared to be a garland strand around her chest and another around her genital area. One photograph in that album depicted her sitting with her legs spread apart. *Id.* at 19–20, ¶ 40.

- One album contained 42 photographs of the girl wearing a blue shirt and a woman's thong underwear revealing her entire buttocks. One picture in the album showed the girl "sitting on the floor with her legs bent up and spread apart, showing part of her buttock and barely covering her genital area." *Id.* at 20, ¶ 41.

- In Officer Cornwell's training and experience, and based on his "discussions with other investigators who are knowledgeable in the field of Child Pornography," he was aware "most individuals who collect child pornography are sexually attracted to children" and those who possess "child pornography" are "highly likely" also to possess legal "child erotica" and to participate in online forums "catering to their sexual preference for children thereby providing a sense of acceptance and validation within a community." *Id.* at 15–16, ¶¶ 26, 28, 29.

Although Officer Cornwell described the photographs, he did not attach copies of them to the affidavit.

The government concedes that agents investigating the website did not observe Mr. Edwards posting or viewing child pornography as defined in 18 U.S.C. § 2256(8), Resp. Br. 16; rather, the government describes the photographs he uploaded as "child erotica." Resp. Br. 15. In turn, the search warrant affidavit defined child erotica as

4

"materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions." Search Warrant Aff. 4, ¶ 6.a (Dkt. No. 23, Ex. A).

In the affidavit, Officer Cornwell concluded "there is probable cause to believe that [Mr. Edwards] has received, possessed, and/or transmitted child pornography." *Id.* at 1, ¶ 3. He therefore sought a warrant to search Mr. Edwards's home—including his computer—for evidence related to the possession of child pornography. *Id.* at 1–2, ¶ 3.

On the basis of the information contained in the affidavit, the magistrate judge agreed there was probable cause to believe Mr. Edwards possessed child pornography at his home. Accordingly, the magistrate judge issued the search warrant, which, when executed on Mr. Edwards at his residence, resulted in the discovery of thousands of images and videos of child pornography.

### B. Motion to Suppress

A grand jury indicted Mr. Edwards on one count of possession of child pornography and five counts of receipt of child pornography on November 5, 2013. Mr. Edwards then moved to suppress the evidence found in his home, claiming the search warrant was not supported by probable cause. After an evidentiary hearing on the motion to suppress, the district court denied the motion. The court acknowledged the motion presented a close question, but ultimately concluded the affidavit "does establish the fair probability that child pornography would be found" at Mr. Edwards's residence. Tr. Mot. Hr'g. Mar. 5, 2014, at 30:1–3 (Dkt. No. 47). "[U]sing common sense and given practical

considerations," the district court held the affidavit had provided the magistrate with a "substantial basis for determining probable cause existed" that Mr. Edwards would have child pornography in his home. *Id.* at 27:4–5, 29:24–25. The district court based this conclusion on the information in the affidavit that Mr. Edwards had posted a large collection of child erotica to the website, *id.* at 28:4-13, and had posted comments suggesting his sexual attraction to the pictured girl, *id.* at 28:16–29:18. The district court also noted that "[l]aw enforcement explained in the affidavit to the magistrate that those who collect child erotica are also likely to collect child pornography." *Id.* at 28:14–16.[3]

In the alternative, the district court found that even if the search warrant was invalid due to the lack of probable cause, "the police officers who acted on the warrant nonetheless did so in good faith." *Id.* at 30:4–5. As a result, the court concluded the good-faith exception to the exclusionary rule shielded the officers' conduct in searching for and seizing the child pornography from Mr. Edwards's home, despite any presumed deficiency in the warrant. *Id.* at 30:6–23.

_____

[3] As will be discussed in greater detail below, this statement problematically reversed what the affidavit actually had averred. In the affidavit, Officer Cornwell stated that "most individuals who collect child pornography . . . are also highly likely to collect other paraphernalia related to their sexual interest in children. This other material is sometimes referred to as 'child erotica' which is defined as any material, relating to children, that serves a sexual purpose for a given individual." Search Warrant Aff. 15-16, ¶¶ 26, 28 (Dkt. No. 23, Ex. A). Officer Cornwell proceeded to explain that child erotica "includes things such as fantasy writings, letters, diaries, books, sexual aids, souvenirs, toys, costumes, drawings, cartoons and non-sexually explicit visual images." *Id.* at 16, ¶ 28. In other words, Officer Cornwell had stated that those who have been found to possess child pornography were also "highly likely" to possess child erotica in some form, not (as the district court found) that those who possess child erotica in some form are "highly likely" to possess child pornography.

Mr. Edwards then entered a conditional guilty plea to the indictment's first count of possession of child pornography, and the district court dismissed the remaining counts on the Government's motion. The district court sentenced Mr. Edwards to sixty-three months in prison and seven years of supervised release. Mr. Edwards now appeals his conviction on the ground that the motion to suppress should have been granted.

## III.    DISCUSSION

### *A. Probable Cause*

Our precedent allows us discretion "to address probable cause or to proceed directly to good faith" in reviewing the denial of a motion to suppress. *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005). We are mindful, however, that "[t]here is no need for courts to adopt the inflexible practice of always deciding whether the officers' conduct manifested objective good faith before turning to the question whether the Fourth Amendment has been violated." *United States v. Leon*, 468 U.S. 897, 924 (1984). Thus where, as here, "resolution of a Fourth Amendment issue is 'necessary to guide future action by law enforcement officers and magistrates,'" we may find it appropriate to address the adequacy of the search warrant's probable-cause determination first. *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) (quoting *Leon*, 468 U.S. at 925).

### 1.  Standard of Review

On review of a district court's denial of a motion to suppress, "we review the district court's factual findings for clear error and consider the evidence in the light most favorable to the Government." *United States v. Haymond*, 672 F.3d 948, 958 (10th Cir.

2012). Moreover, determinations by the district court "relating to the sufficiency of a search warrant are conclusions of law which this court reviews de novo." *Id.* But "we do not review de novo the determination of probable cause by the issuing judge or magistrate. Instead, we give great deference to the issuing judge's finding of probable cause." *Id.* (internal quotation marks and citation omitted). "We ask only whether, under the totality of the circumstances presented in the affidavit, the judge had a 'substantial basis' for determining that probable cause existed." *Id.* at 958–59 (ellipsis and citation omitted). But even affording the magistrate great deference in this determination, we "will not defer if there is no 'substantial basis for concluding that probable cause existed.'" *Danhauer*, 229 F.3d at 1006 (internal quotation marks omitted).

## 2.  Sufficiency of Affidavit in Support of Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980) (internal quotation marks omitted).

To search a suspect's residence, "[a] search warrant must be supported by probable cause, requiring more than mere suspicion but less evidence than is necessary to convict." *Danhauer*, 229 F.3d at 1005 (internal quotation marks omitted). In general, probable cause justifying a search is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a

neat set of legal rules." *Florida v. Harris*, 133 S. Ct. 1050, 1056 (2013). This necessarily requires application of a "practical and common-sensical standard," based on the "totality of the circumstances." *Id.* at 1055. A warrant is based on probable cause if the magistrate makes a "practical, common-sense decision" that, "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Thus, the "affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *Danhauer*, 229 F.3d at 1006.

Here, the magistrate judge issued the warrant based on Mr. Edwards's possession and sharing of child erotica, the law-enforcement officer affiant's opinion that people who possess child pornography are also likely to possess child erotica, and Mr. Edwards's sexually suggestive comments about the child in the photographs. Considering the impact of each of these allegations on the totality of the circumstances, we hold the affidavit failed to provide sufficient probable cause to establish "a nexus between suspected criminal activity and the place to be searched." *Id.*

### a. Possession of child erotica

We have previously upheld a warrant to search a suspect's home for child pornography where the supporting affidavit averred that *child pornography* had been made available on a file-sharing service from an internet protocol ("IP") address traced to the suspect's residence. *Haymond*, 672 F.3d at 959 (stating "[t]his information would cause a reasonable person to believe evidence of child pornography would be recovered

9

from [the defendant's] residence.").[4] But the search-warrant affidavit here provided evidence only that Mr. Edwards possessed legal *child erotica*. Thus, we must consider whether the totality of the circumstances as presented to the magistrate judge in the search-warrant affidavit established probable cause that *child pornography* would be found at Mr. Edwards's home. Although we have not previously addressed this precise issue, a panel of this court has considered the possession of child erotica as one of the circumstances supporting probable cause to search personal property kept in the workplace.

In *United States v. Soderstrand*, 412 F.3d 1146, 1149 (10th Cir. 2005), a clerical employee in the Electrical Engineering Department at Oklahoma State University came upon a safe "behind a punch bowl on some boxes in a department supply room." Although the department had made an attempt to locate the owner of the safe earlier that year, no one came forward to claim it. The employee, finding a key in the lock, "decided to open the safe, ostensibly to determine who owned it." *Id.* Inside, the employee

_____

[4] *See also United States v. Riccardi*, 405 F.3d 852, 860–61 (10th Cir. 2005) (affirming finding of probable cause to search a computer where the affidavit alleged the defendant called teenage boys for sexual gratification, his home contained hard-copy photos of child pornography, a receipt showed that he had digitized photographs, and that, in the investigating officer's experience, "possessors of child pornography often obtain and retain images of child pornography on their computers"); *United States v. Lapsins*, 570 F.3d 758, 765 (6th Cir. 2009) (holding that a warrant was supported by probable cause where the affidavit detailed that the defendant had uploaded "child pornography" but did not describe the images or assert that they were, in fact, real children as opposed to computer generated children); *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005) (holding that defendant's membership in child pornography website, coupled with evidence that collectors of child pornography overwhelmingly use the internet and computers to distribute and hoard this material, was sufficient to establish a "fair probability" the defendant would possess child pornography himself).

discovered letters and other documents addressed to Dr. Michael Soderstrand (a professor in the department), photos of Dr. Soderstrand, three CDs, a number of Polaroid-style and 35mm photos, and sixty-three 3.5-inch computer diskettes. *Id.* The employee then opened one of the CDs on her computer, and "[o]n it she found an image that appeared to be several nude Asian children about 10–12 years old." *Id.* at 1150. The employee returned the CD to the safe and attempted to anonymously report her discovery to school authorities. Notably, she sent two emails to the department dean, "in which she alleged that Dr. Soderstrand kept child pornography in a safe in the storage room next to his office." *Id.* The dean notified the campus police who took the safe as evidence.

Campus police then sought a warrant to search the safe. An officer prepared a search-warrant affidavit that included the circumstances surrounding the discovery of the safe and the employee's description of the image of the naked minors contained on the CD. Based on this information, the magistrate judge issued a search warrant to examine the contents of the safe. *Id.* at 1150–51. Upon execution of the warrant, officers discovered material in the safe which formed the evidentiary basis for a search of Dr. Soderstrand's computers and files. The investigation ultimately resulted in the discovery of substantial amounts of child pornography on Dr. Soderstrand's computers and two CDs. *Id.* at 1150.

The government charged Dr. Soderstrand with possession of child pornography. In response, Dr. Soderstrand moved to suppress the evidence found in the safe, claiming the search warrant was not supported by probable cause. The district court denied the motion

to suppress and Dr. Soderstrand entered a conditional guilty plea, reserving his right to challenge the denial of his motion to suppress. *Id.*

On appeal, Dr. Soderstrand first argued the search-warrant affidavit was facially deficient because it merely described an image depicting nude children, which does not necessarily constitute illegal child pornography and therefore did not give rise to probable cause that contraband or evidence of a crime would be found in the safe. *Id.* at 1151–52. In rejecting that argument, we acknowledged that "other circuits have concluded that depictions of mere nudity [are] not sufficient to constitute child pornography; rather, the nudity must be depicted in a lascivious manner in order to be criminal." *Id.* (citing *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999) (explaining that nudity alone is not enough under the statute because there must be both an "exhibition" of the genital area and such exhibition must be lascivious) and *United States v. Villard*, 885 F.2d 117, 124 (3rd Cir. 1989) (same)). But we concluded that these cases spoke to the Government's burden of proof at trial rather than the standard for probable cause, which requires "only the probability, and not a prima facie showing, of criminal activity." *Id.* at 1153 (quoting *Gates*, 462 U.S. at 235).

We nevertheless concluded the totality of the information contained in the affidavit was sufficient for the magistrate judge "to reasonably conclude that images of child pornography might reasonably be expected to be contained within the computer disks, CDs or other data storage devices contained in the safe." *Id.* at 1153. We specifically noted that the affidavit related the employee's investigation of the safe; her discovery therein of photographs, computer disks, and Dr. Soderstrand's personal effects;

12

her further discovery that one of the disks contained an image of naked children; her allegation of Dr. Soderstrand's possession of child pornography to the Dean, and the Dean's communication of this information to police. We concluded these circumstances, taken together, gave the magistrate judge "a substantial basis for determining probable cause existed." *Cf. id.* at 1152 (internal quotation marks omitted).[5]

We cannot reach the same conclusion regarding the affidavit here. We initially note that although the officers in *Soderstrand* sought to search an unattended safe in a department storage room,[6] the officers here sought to search Mr. Edwards's home. And "[t]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton*, 445 U.S. at 585 (internal quotation marks omitted). The facts of *Soderstrand* are also distinguishable in other significant respects.

First, the safe in *Soderstrand* was found "behind a punch bowl on some boxes in a department supply room." *Soderstrand*, 412 F.3d at 1149. When department personnel inquired about who owned the safe, Dr. Soderstrand did not come forward to claim ownership. *Cf. United States v. McDonnell*, 792 F.3d 478, 501 (4th Cir. 2015) ("[A]n attempt to conceal actions may indicate an individual has a guilty conscience or is aware

_____

[5] We also concluded that the officers acted in good faith irrespective of the validity of the warrant. *United States v. Soderstrand*, 412 F.3d 1146, 1153 (10th Cir. 2005); *see United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) (explaining that we may address the adequacy of a search warrant to provide guidance to law enforcement even if the conduct of the officers at issue manifested objective good faith).

[6] We assumed for purposes of our analysis that Dr. Soderstrand had a reasonable expectation of privacy in the safe—despite leaving it unattended in a common storage room and failing to claim it—thus necessitating a warrant for the search. *Soderstrand*, 412 F.3d at 1152.

of the unlawfulness of the actions."). Although this element of concealment or secrecy certainly does not by itself give rise to an inference of illegal activity, it contrasts with Mr. Edwards's behavior here of posting legal images and comments to a public website from his home.

Second, the employee in *Soderstrand* alleged that Dr. Soderstrand was keeping child pornography in the safe, and she related to the affiant-officer a description of a photo of naked, prepubescent children whose genital areas were visible. The photo thus described in layman terms could have been illegal child pornography or legal child erotica. But this description was coupled with the allegation from the employee—the only person who had at that point viewed the contents of the safe—that the safe contained child pornography, which the magistrate judge could have reasonably concluded increased the likelihood the photograph depicted child pornography rather than child erotica. *See United States v. Simpson*, 152 F.3d 1241, 1247 (10th Cir. 1998) (observing that "the words 'child pornography' need no expert training or experience to clarify their meaning" and that "such generalized descriptions" are adequate to convey to the magistrate judge the nature of the evidence in evaluating an affidavit for probable cause (internal quotation marks omitted)).

Here, the investigating officers never alleged that any of the material Mr. Edwards posted to the internet constituted child pornography. Indeed, the affiant-officer, trained to investigate and identify child pornography, averred only that Mr. Edwards was known to possess legal child erotica. None of the detailed descriptions contained in the affidavit described photographs conforming to the definition of child pornography also included in

14

the affidavit. There was no uncertainty here regarding the content of the images Mr. Edwards had posted, and the Government concedes they constituted legal child erotica. Resp. Br. 15.

Thus, this case differs in several material respects from *Soderstrand*, and the affidavit here lacks averments comparable to those we relied on to conclude the search warrant in *Soderstrand* was properly issued. Although none of these circumstances standing alone is determinative of the existence of probable cause, absent the factors discussed above, we find that *Soderstrand* does not control here. Like the Eighth Circuit in *United States v. Hansel*, 524 F.3d 841, 846 n.3 (8th Cir. 2008), *Soderstrand* did not decide "whether possession of child erotica alone could ever be enough to establish probable cause that an individual possesses child pornography."[7] And it is unnecessary for us to do so here.

Instead, we consider whether, under the totality of the unique circumstances in this case, the affidavit established probable cause to believe child pornography would be

_____

[7] *Hansel* and other cases cited by the Government here relied on more than the possession of child erotica to support probable cause to search for child pornography. *See, e.g.*, *United States v. Hansel*, 524 F.3d 841, 844–49 (8th Cir. 2008) (holding that "the totality of the circumstances described in the affidavit established a fair probability that child pornography would be found" on the defendant's computer where the affidavit combined allegations that defendant possessed 8x10 photographs of nude minors qualifying only as child erotica with allegations that two minor girls had reported the defendant had sexually abused them, the 8x10 photographs were "imprinted with an Internet address such as www.little-virgins.com," and the defendant possessed computer equipment consistent with that used to make pornography); *United States v. Flanders*, 468 F.3d 269, 270 (5th Cir. 2006) (affidavit alleged the defendant had sexually abused his two-year-old daughter, his wife reported he spent a lot of time on pornographic websites and in chat rooms, and he took a digital photograph of his daughter naked).

found at Mr. Edwards's home. We now discuss whether those additional facts, combined with Mr. Edwards's possession of child erotica, established probable cause that child pornography would be found at his home.

b. *Correlation between possessing child pornography and collecting child erotica*

Mr. Edwards posted hundreds of images of child erotica depicting the same underage girl on the website. And his responses to the comments made by other users about the images suggested he is sexually attracted to children. Although this behavior is disturbing, the Government admits it does not constitute illegal conduct.

In other contexts, courts are reluctant to presume that persons are inclined to engage in certain illegal activity based on having engaged in a particular legal activity. *Jacobson v. United States*, 503 U.S. 540, 551, 554 (1992) (considering a criminal defendant's entrapment defense to accusations of receiving child pornography through the mails). In *Jacobson*, the Court found the defendant was "acting within the law" when he received two magazines containing "sexually explicit depictions of children for noncommercial use" because neither federal nor state law prohibited such conduct at the time. After a change in federal law made it illegal to receive such magazines through the mail, two government agencies contacted him repeatedly over a period of two years under various guises in an attempt to interest him in receiving child pornography. The defendant eventually ordered a magazine from a catalogue he received through one of these guises. The Supreme Court held the defendant's receipt of the initial two magazines could not establish the predisposition to receive or possess child pornography "independent of the Government's acts" as would be required for the government to

16

overcome the defendant's entrapment defense. The Court explained, "proof that petitioner engaged in legal conduct and possessed certain generalized personal inclinations is not sufficient evidence to prove beyond a reasonable doubt that he would have been predisposed to commit the crime charged independent of the Government's coaxing." *Id.* at 552 n.3.

Admittedly, *Jacobson* is distinguishable not only because of its focus on entrapment but also because, like *Horn*, 187 F.3d 781, and *Villard*, 885 F.2d 117, both of which we distinguished in *Soderstrand*, 412 F.3d at 1153, *Jacobson* concerns the quantum of evidence required for proof beyond a reasonable doubt at trial. Nevertheless, we find its reasoning instructive on the danger of assuming that legal conduct standing alone suggests the actor is also inclined to engage in criminal conduct. As noted in *Jacobson*, "most people obey the law even when they disapprove of it. This obedience may reflect a generalized respect for legality or the fear of prosecution, but for whatever reason, the law's prohibitions are matters of consequence." *Jacobson*, 503 U.S. at 551.

Ultimately however, a "finding of probable cause rests not on whether particular conduct is 'innocent' or 'guilty,' but on the 'degree of suspicion that attaches' to the Government's evidence." *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 128 (2000)). For example, innocent or legal conduct may be infused with the degree of suspicion necessary to support a finding of probable cause when examined "through the lens of those 'versed in the field of law enforcement.'" *Id.* (quoting *Texas v. Brown* , 460 U.S. 730, 742 (1983) (holding probable cause supported by officer's testimony, based on his participation in previous narcotics

17

arrests, that balloons tied like the one possessed by the defendant frequently contain narcotics)). Thus, the issue here is whether the warrant affidavit, when viewed through the insight provided by Officer Cornwell's law-enforcement experience, provides a link between the posting of legal child erotica online and the possession of child pornography sufficient to establish a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

The district court concluded that such a link was provided by Officer Cornwell's averment in the affidavit that those who possess *child pornography* are highly likely also to possess *child erotica*. But in making that connection, the district court inverted the statement in the affidavit, reading it instead as an assertion that those who possess *child erotica* are highly likely to possess *child pornography*. *See* Tr. Mot. Hr'g. Mar. 5, 2014, at 28:14–16 (Dkt. No. 47) (denying motion to suppress in part on the basis that "[l]aw enforcement explained in the affidavit to the magistrate that those who collect child erotica are also likely to collect child pornography"). Although the statement as inverted might provide the necessary link between the legal possession of child erotica and the illegal possession of child pornography, that is not what Officer Cornwell avers. Instead, he states that persons found in possession of illegal child pornography are highly likely to also possess legal child erotica. This difference is significant.

The warrant affidavit does not allege that Mr. Edwards was found in possession of child pornography. The affidavit also lacks any information based on Officer Cornwell's law enforcement experience about the types of materials possessors of child erotica— such as Mr. Edwards—are likely to maintain in their homes. Consequently, a statement

that collectors of child pornography—a group that there was no evidence includes Mr. Edwards—are highly likely to also possess child erotica did not provide "a substantial basis for concluding that probable cause existed" that child pornography would be found in Mr. Edwards's home. *Danhauer*, 229 F.3d at 1006.

### c. *Correlation between possession of child pornography and other proclivities*

The same logical flaw underlying the correlation between child-pornography collectors and the possession of child erotica is also found in the affidavit's allegations about the general proclivities of those who possess child pornography. For example, the affidavit states that people who collect child pornography tend to "reinforce their fantasies" and may do so by participating in online forums where they can interact with "other like-minded adults." Search Warrant Aff. 16, ¶ 29 (Dkt. No. 23, Ex. A). Thus, we must decide whether the fact that possessors of child pornography frequent online forums, arguably like the website where Mr. Edwards posted child erotica and comments suggesting a sexual attraction to a child, combined with his possession of child erotica, provided probable cause that child pornography would be found at Mr. Edwards's home.

Although this circuit has not yet addressed the issue, other jurisdictions disagree as to whether a defendant's pedophilic tendencies can support probable cause to search for child pornography. Some circuits have rejected the argument that evidence showing a defendant shares some proclivities with child-pornography collectors can establish probable cause to search for evidence of child pornography if no evidence is presented that the defendant is a collector of such materials. *See, e.g.*, *United States v. Zimmerman*, 277 F.3d 426, 433 n.4 (3d Cir. 2002) (disregarding expert opinion that child-pornography

19

collectors hoard their materials where the affidavit contained no information indicating that child pornography had been located in defendant's home); *United States v. Weber*, 923 F.2d 1338, 1344–45 (9th Cir. 1991) (holding that foundationless evidence of the habits of "child molesters," "pedophiles," and "child pornography collectors," coupled with evidence that on one occasion the defendant had ordered but never picked up child pornography, was insufficient to establish probable cause); *United States v. Adkins*, 169 F. App'x 961, 967 (6th Cir. 2006) (unpublished) ("Standing alone, a high incidence of child molestation by persons convicted of child pornography crimes may not demonstrate that a child molester is likely to possess child pornography.").

In addition, two decisions from the Second Circuit clash over the significance of a defendant's participation in a website where pornographic images of children are exchanged. *United States v. Coreas* concerned a website called "Candyman," which was "an interactive 'e-group' website that allowed its members to exchange information, upload and download electronic files, and chat with other members in 'real time.'" 419 F.3d 151, 152 (2d Cir. 2005). In that case, the panel explained that "[t]he alleged 'proclivities' of collectors of child pornography, on which the district court relied, are only relevant if there is probable cause to believe that [the defendant] is such a collector," which the affidavit had not alleged. *Id.* at 156. Absent evidence raising a reasonable suspicion that Mr. Coreas possessed or collected child pornography, the panel determined that information about the proclivities of child pornography collectors (which was virtually all that remained in the warrant affidavit after excising knowingly or recklessly false information stating that all users would automatically receive any pornographic

20

images uploaded by other users) should not be sufficient to establish probable cause to search the defendant's home. *Id.* at 153, 156–57. Thus, the redacted affidavit in *Coreas* "[did] not remotely satisfy Fourth Amendment standards," *id.* at 156, because the government did not meet its "burden to provide probable cause to believe that a defendant was undertaking some unlawful activity before a search warrant may issue," *id.* at 158. Nevertheless, the panel reluctantly affirmed the denial of the motion to suppress and the resulting conviction based on principles of horizontal stare decisis. *Id.* at 159.[8]

The *Coreas* panel determined it was bound by the outcome in *United States v. Martin*, 426 F.3d 68 (2d Cir. 2005), which had been decided by a different panel of the Second Circuit only weeks before *Coreas*. *Martin* concerned a defendant's use of "girls12-16"—another, more explicit pedophilic e-group than Candyman—but also with a search based on a defective search-warrant affidavit by the same affiant and containing the same general averments about pornography collectors as in *Coreas*. *Id.* at 73–74. Specifically, the FBI affiant stated that in his training and experience, collectors of child pornography share common traits and characteristics including rarely disposing of their

_____

[8] A panel of this court considered the same defective affidavit in an unpublished case involving a defendant's participation in the Candyman website in *United States v. Hutto*, 84 F. App'x. 6 (10th Cir. 2003) (unpublished). We upheld the district court's denial of the motion to suppress, adopting its findings that because the affidavit alleged "the [Candyman] group's clear purpose was to share child pornography," "the defendant voluntarily became a member of the group," and "images containing child pornography were available to all members," it "provided a sufficient basis for the magistrate judge to conclude that there was a fair probability that child pornography would be found at the defendant's residence or on his computer." *Id.* at 8. We did not have occasion, however, to address the inaccuracies later identified in the defective affidavit which, if redacted, would have eliminated most of the facts relied on in our decision.

collections and maintaining their collections in a private and secure place such as their homes. *Id.* at 75. The *Martin* panel acknowledged the inaccuracies in the affidavit, *id.* at 72–73, but held the excised warrant affidavit still established probable cause because "[i]t is common sense that an individual who joins such a site would more than likely download and possess such material," *id.* at 75,[9] and "a substantial likelihood of criminal activity may exist if an individual is a member of an internet e-group whose purpose is unlawful," *id.* at 76. Although the *Coreas* panel roundly criticized the analysis in *Martin*, it was bound to follow *Martin*'s holding.

Here, Officer Cornwell asserted various characteristics and proclivities of those who possess child pornography, such as that "child pornography collectors reinforce their fantasies" by, among other things, "interacting, both directly and indirectly, with other like-minded adults" in such online forums or other communities. Search Warrant Aff. 16, ¶ 29 (Dkt. No. 23, Ex. A). In much the same way that Officer Cornwell's assertion that

_____

[9] Judge Pooler dissented in *Martin* based in part on the majority's "attempts to create the required nexus between Martin and illegal activity by appealing to 'common sense.'" *Martin*, 426 F.3d at 83 (Pooler, J., dissenting). "While the majority is correct that a magistrate presented with a warrant may 'make a practical, common-sense decision,' that decision must be based on the 'circumstances set forth in the affidavit.'" *Id.* (quoting *Gates*, 462 U.S. at 238). Judge Pooler also later dissented from the Second Circuit's denial of Mr. Martin's Petition for Rehearing In Banc, expressing her concern that "[t]he alarming principle for which *Martin* stands (and which *Coreas* follows by constraint) is that the government may rely solely on a weak association with an organization engaged in both legal and illegal activity to find probable cause to search an individual's home. This type of guilt by association is unprecedented in the law of this circuit and has been explicitly rejected by the Supreme Court." *United States v. Martin*, 430 F.3d 73 (2d. Cir. 2005) (Pooler, J., dissenting). Judge Pooler explained in her original *Martin* dissent that "[s]uch reasoning would lead us to conclude that if collectors of illegal visual depictions tend to be men, then men are likely to be collectors of illegal visual depictions." 426 F.3d at 82 (Pooler, J., dissenting).

those who collect child pornography are likely to collect child erotica fails to support a conclusion that possessors of child erotica are likely to possess child pornography, an assertion about the characteristics or proclivities of child pornography collectors does not establish a fair probability that Mr. Edwards would share those characteristics in the absence of evidence he is a collector or viewer of child pornography. And there was no evidence presented to the magistrate judge here, as was true in *Martin*, that "the overriding, if not the sole, purpose" of the website in which Mr. Edwards participated was "to facilitate the receipt and distribution of child pornography." *Martin*, 426 F.3d at 74. Under these circumstances, the warrant affidavit does little to infuse Mr. Edwards's legal conduct with the suspicion necessary to support probable cause that he was in possession of illegal child pornography.

In fact, even when the pedophilic tendencies of the defendant have led to sexual offenses against children, courts have not automatically equated that activity with the possession of child pornography. For example, in *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008) (Sotomayor, J.), the Second Circuit issued an opinion that narrowed its holding in *Martin* to reach an outcome more consistent with the reasoning of *Coreas*. In *Falso*, the district court had found the defendant's eighteen-year-old misdemeanor conviction stemming from sexual contact with a seven-year-old "'highly relevant' to the probable cause calculus in light of the affidavit's representation that 'the majority of individuals who collect child pornography are persons who have a sexual attraction to [children].'" 544 F.3d at 122. As a result, it denied the motion to suppress the evidence found upon execution of a warrant to search the defendant's home.

23

Writing for the panel on appeal, then-Judge Sotomayor identified the same logical fallacy in the district court's analysis as found in the decisions of the magistrate judge and district court here: "'It is an inferential fallacy of ancient standing to conclude that, because members of group A' (those who collect child pornography) 'are likely to be members of group B' (those attracted to children), 'then group B is entirely, or even largely composed of, members of group A.'" *Id.* (quoting *Martin*, 426 F.3d at 82 (Pooler, J., dissenting)).[10]

The *Falso* Court ultimately found the defendant's history of child sexual abuse to be stale. *Id.* at 123. It then held that "[a]lthough offenses relating to child pornography and sexual abuse of minors both involve the exploitation of children, that does not compel, or even suggest, the correlation drawn by the district court." *Id.* at 122. "Perhaps it is true," reasoned Judge Sotomayor, "that all or most people who are attracted to children collect child pornography." *Id.* But, as with the warrant affidavit here, "that association [was] nowhere stated or supported in the affidavit." *Id.* Although she acknowledged that "the district court undoubtedly had the safety of the public in mind," Judge Sotomayor cautioned that "an individual's Fourth Amendment right cannot be vitiated based on fallacious inferences drawn from facts not supported by the affidavit." *Id.; see, e.g.*, *Virgin Islands v. John*, 654 F.3d 412, 418–19 (3d Cir. 2011) (holding that

_____

[10] Again, relevant here, then-Judge Sotomayor approvingly noted that "[i]n *Martin*, Judge Pooler criticized the majority's inference that because collectors of child pornography are likely to be subscribers of e-groups, that the inverse also is true: namely, that subscribers are likely to collect child pornography." *Falso*, 544 F.3d at 122 n.14 (citing *Martin*, 426 F.3d at 82 (Pooler, J., dissenting)). This is the same inversion at issue in the district court's decision here.

evidence showing a person has sexually assaulted a child could not establish probable cause to search for child pornography where the search warrant did not allege that child molesters are also likely to have child pornography); *United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008) (holding that a search for child pornography was not supported by probable cause where the affidavit was based on the defendant's online confession to an undercover officer that he had an attraction to children and had sexually molested a seven-year-old boy, but the affidavit lacked expert information about the relationship between molestation and child pornography possession).

But at least one circuit has held that a warrant to search for evidence of child pornography was supported by sufficient probable cause where it was based on a common-sense determination that those who abuse children are also likely to possess child pornography. In *United States v. Colbert*, the Eighth Circuit considered whether probable cause justified a search for child pornography where the affidavit alleged that the defendant had attempted to lure a five-year-old girl to his apartment by claiming that he had "movies for her to watch." 605 F.3d 573, 576–77 (8th Cir. 2010) (noting that "[d]etermining whether probable cause exists requires a commonsense analysis of the facts available to the judicial officer who issued the warrant"). The Court upheld the district court, recognizing that "individuals sexually interested in children frequently utilize child pornography to reduce the inhibitions of their victims" and that "sexual depictions of minors could be logically related to the crime of child enticement,"

particularly given the defendant's specific reference to movies and videos. *Id.*[11] Thus, *Colbert* held the search warrant affidavit was sufficient to provide probable cause. *Id.* at 579; s*ee also United States v. Byrd*, 31 F.3d 1329, 1339 (5th Cir. 1994) (explaining in the context of an entrapment defense and as to evidence sufficient to support a jury's conviction, rather than in a probable cause inquiry, that "common sense would indicate that a person who is sexually interested in children is likely to also be inclined, i.e., predisposed, to order and receive child pornography").

Here, the affidavit provides significantly less. Neither his posting of child erotica nor his comments suggesting a sexual attraction to the child in the posted images established probable cause that Mr. Edwards possessed child pornography in his home. Similarly, the fact that child pornography collectors also collect child erotica, participate in certain online forums relating to child erotica, and share other common characteristics does not support an inverse conclusion that possessors of child erotica and participants in such online forums are also collectors of child pornography. *Cf. Jacobson*, 503 U.S. at

_____

[11] The *Colbert* Court explained,

> There is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography. Child pornography is in many cases simply an electronic record of child molestation. Computers and internet connections have been characterized elsewhere as tools of the trade for those who sexually prey on children. For individuals seeking to obtain sexual gratification by abusing children, possession of child pornography may very well be a logical precursor to physical interaction with a child: the relative ease with which child pornography may be obtained on the internet might make it a simpler and less detectable way of satisfying pedophilic desires.

*United States v. Colbert*, 605 F.3d 573, 578 (8th Cir. 2010) (citation omitted).

551–52 (discussing defendant's entrapment defense and stating whatever "inclinations and fantasies" the defendant may have, he may choose never to cross the line from legal child erotica to prohibited child pornography, whether out of "respect for legality or the fear of prosecution"). While this may be true, the affidavit contains no facts to support it. Accordingly, we hold the affidavit fails to provide probable cause that child pornography would be found at Mr. Edwards's home.

### B. The Good-Faith Exception

Because we conclude the warrant was not supported by probable cause, we now consider whether the district court properly denied the motion to suppress under the good-faith exception established by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984). We hold that it did.

"Under the good-faith exception to the exclusionary rule, if a warrant is not supported by probable cause, the evidence seized pursuant to the warrant need not be suppressed if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." *United States v. Augustine*, 742 F.3d 1258, 1262 (10th Cir.), *cert. denied*, 134 S. Ct. 2155 (2014) (internal quotation marks and brackets omitted); *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1234 (10th Cir. 2009) ("We will not reverse the district court's decision to deny suppression of the evidence obtained during a search if the officers who executed the warrant relied upon it in good faith."). When officers rely on a warrant, we presume they acted in objective good faith. *Augustine*, 742 F.3d at 1262; s*ee also Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) ("[T]he fact that a neutral magistrate has issued a warrant is

the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith." (internal quotation marks omitted)). This is because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Leon*, 468 U.S. at 921. As the Supreme Court further explained in *Leon*, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." *Id.* (internal quotation marks, brackets, and citation omitted).

But the presumption of good faith is not absolute. *Augustine*, 742 F.3d at 1262. Rather, an officer's reliance on a warrant is not reasonable in four situations:

> (1) when the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth; (2) when the issuing magistrate wholly abandon[s her] judicial role; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

*Id.* (internal quotation marks omitted); *accord Messerschmidt*, 132 S. Ct. at 1245 (recognizing that the "shield of immunity" conferred by the warrant will be lost where the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"). Despite the Supreme Court's admonition that the circumstances where the exceptions to good faith apply will be rare

28

and the threshold for establishing an officer acted in bad faith will be high, *see Messerschmidt*, 132 S. Ct. at 1245, 1250, Mr. Edwards argues that all four exceptions are applicable here. We disagree and instead uphold the district court's application of the good faith exception to the exclusionary rule.

## 1. Exceptions One, Two, and Four

We easily dispose of Mr. Edwards's claim that exceptions one, two, or four prevent imposition of the good-faith exception. With respect to exception one, Mr. Edwards makes a vague allegation that Officer Cornwell misled the magistrate by overstating the descriptions of the pictures at issue. But Mr. Edwards provides no evidentiary support for this accusation. And as the government notes—and Mr. Edwards does not dispute—his attorney did not even review the images described in the affidavit. Resp. Br. 25. Thus, the record contains nothing to suggest Officer Cornwell's description of the images is inaccurate.

Similarly, under exception two, Mr. Edwards argues opaquely that the magistrate judge abandoned his judicial role by failing to view the images of child erotica to determine if they constituted child pornography. But our precedent directly forecloses this contention. *See United States v. Simpson*, 152 F.3d 1241, 1246–47 (10th Cir. 1998) (upholding a search warrant where the officer generically described items as "child pornography" but did not present to the judge any "copies of unlawful materials believed to be in [the defendant's] possession" or describe in detail the content of those materials); *see also New York v. P.J. Video, Inc.*, 475 U.S. 868, 874 n.5 (1986) (noting that "we have never held that a magistrate must personally view allegedly obscene films prior to issuing

a warrant authorizing their seizure"). Moreover, the argument also fails because Officer Cornwell alleged only that the images were child erotica, and neither the district court nor the magistrate judge found that the images, as described, were instead child pornography. Indeed, the district court anticipated that its ruling might raise concerns "of the government being able to enter homes on the basis of legal activity," such as the possession of child erotica. Tr. Mot. Hr'g. Mar. 5, 2014, at 29:21–23 (Dkt. No. 47).

Under exception four, Mr. Edwards makes a brief and legally unsupported claim that the warrant was facially deficient in that it failed to describe with sufficient particularity the "child pornography" that could be seized. According to Mr. Edwards, the warrant contains "no specification of a pornographic movie that was possessed or observed by title or any other particularity which would enable it to be seized as evidence that corroborates the alleged victim's story. Since the detective's definition of 'child pornography' includes adult pornography, everything from a *Playboy* magazine to any adult movie to computers, CD's, and thumb drives could theoretically be seized." Aplt. Br. 25. But the affidavit includes the definition of child pornography as provided by federal statute. Thus, contrary to Mr. Edwards's assertion, the warrant was limited to the search for child pornography and would not permit the seizure of *Playboy* magazines or adult videos unless they met that definition. We therefore reject Mr. Edwards's attempts to invoke exceptions one, two, and four.

30

## 2. Exception Three

Finally, Mr. Edwards invokes exception three, claiming the affidavit was so lacking in probable cause that no reasonable officer could have believed it valid, in spite of the magistrate judge's approval. Again, we are not convinced.

As explained, a law enforcement officer is presumed to act in good faith when he relies on and executes a search warrant issued by a neutral magistrate. *Augustine*, 742 F.3d at 1262. This is because "[i]t is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination." *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986) (internal quotation marks omitted). Thus, "police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a warrant." *United States v. Tuter*, 240 F.3d 1292, 1300 (10th Cir. 2001). As the Supreme Court explained, "[t]he question [therefore] is not whether the magistrate erred in believing there was sufficient probable cause to support the scope of the warrant he [or she] issued. It is instead whether the magistrate so obviously erred that any reasonable officer would have recognized the error." *Messerschmidt*, 132 S. Ct. at 1250.

Applying this standard, we hold that reliance on the warrant was not unreasonable in this case. The magistrate judge's determination that a fair probability existed that child pornography would be found in Mr. Edwards's home was based on Mr. Edwards's sexual attraction to the child pictured in the hundreds of images of child erotica he had posted online and the stated correlation between child pornography possession and child erotica possession. Although the link between Mr. Edwards's postings and the possession of

31

pornography was logically fallacious, it is not so obviously unsound that it rendered reliance on the warrant objectively unreasonable. *Compare United States v. Colbert*, 605 F.3d 573, 579 (8th Cir. 2010) (concluding the good-faith exception applied where an affidavit detailed the defendant's attempts to lure a child to his apartment), *with Virgin Islands v. John*, 654 F.3d 412, 418–19 (3d Cir. 2011) (holding the good faith exception did not apply where the affidavit did not "even . . . hint at" whether there was probable cause to believe the defendant possessed child pornography because it merely provided evidence the defendant had committed sex crimes against his students on school property, and that he kept two particular pieces of evidence of those crimes in his home).[12]

But Mr. Edwards argues the good faith exception is inapplicable here because "[t]he officer, who is the affiant and author of the search warrant is the same officer [who] executed the search warrant." Aplt. Br. 26. The Supreme Court observed in *Leon*, that "[i]t is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination." 468 U.S. at 923

_____

[12] At least one circuit has held, albeit in an unpublished opinion, that the good-faith exception applied to a warrant that was substantially similar to the one at issue here. *See United States v. Gove*, 452 F. App'x 555, 557 (5th Cir. 2011) (unpublished). There, the search warrant was supported by an affidavit stating that the defendant's brother had observed non-pornographic child erotica on the defendant's computer, and that the affiant knew from her "training and experience that the majority of people who collect child pornography collect child erotica as well." *Id.* The court concluded the affidavit was not "bare bones" because it contained evidence of child-erotica possession and was supported with the agent's expert opinion that there is a link between child-erotica possession and child-pornography possession. Officers were therefore entitled to rely on the warrant in good faith. *Id.*

n.24. Thus, an officer cannot "obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." *Id.* Here, Mr. Edwards points to nothing to support his assertion that Officer Cornwell "affirmatively misled the magistrate by making statements that appear to be related and presented no supporting facts to connect them." Aplt. Br. 24. Nor is there any evidence that Officer Cornwell intentionally provided a bare bones affidavit in the hopes of relying on his fellow officers, who were unaware of the actual circumstances, to conduct the search. To the contrary, the affidavit was deficient not because of a lack of detail, but rather because of the logical infirmity of concluding, based on the assertion that collectors of child pornography also collect child erotica, that the inverse must also be true. Where both the magistrate judge and the district court failed to notice this logical defect, we are not convinced it should have been obvious to Officer Cornwell, at least not prior to this decision.[13] Thus, we hold that Officer Cornwell and the other law-enforcement officers executing the warrant here were entitled to rely on the magistrate judge's legal determination that probable cause existed to search Mr. Edwards's residence for child pornography.

_____

[13] *See also United States v. Flanders*, 468 F.3d 269, 271–72 (5th Cir. 2006) (good faith exception applied to warrant to search for child pornography where the defendant was alleged to have sexually abused and taken a nude photo of his daughter); *Virgin Islands*, 654 F.3d at 425–26 (Fuentes, J., dissenting) (good faith exception should apply where there were differing opinions regarding whether evidence of child molestation would provide probable cause to search for child pornography); *United States v. Zimmerman*, 277 F.3d 426, 438–39 (3d Cir. 2002) (Alito, J., dissenting) (good faith exception should apply even if evidence was stale for probable cause purposes because the staleness question was a close judgment call and, as such, could not be so obviously wrong that a lay officer could not reasonably rely on the warrant).

## IV. CONCLUSION

We **AFFIRM** the district court's denial of the motion to suppress based on the good-faith exception to the exclusionary rule, despite the lack of probable cause supporting the search warrant.