Merrimack
No. 2009-872

THE STATE OF NEW HAMPSHIRE

v.

LUIS LOPEZ

Argued: February 10, 2011
Opinion Issued: June 15, 2011

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Stephanie Hausman*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. After a jury trial in Superior Court (*Brown*, J.), the defendant, Luis Lopez, was convicted of one count of felony endangering the welfare of a child, *see* RSA 639:3, III (2007), and seven misdemeanor counts of endangering the welfare of a child, *see* RSA 639:3, I (2007). On appeal, he argues that the trial court erred in finding sufficient evidence to convict him on the felony count. We affirm.

The jury could have found the following facts. Between December 2006 and September 2007, the defendant lived with the victim, L.P., her mother, H.W., and H.W.'s two other young children. L.P. turned eleven that summer. During that time, L.P. enjoyed watching the television show "America's Next Top Model," which she described as being about "regular girls that want to be models." She wanted to be a model and would pretend to be one by "putting on appropriate clothes, and looking at [herself] in the mirror."

In June 2007, the defendant began using his cell phone to take photographs of L.P. Some of the photographs were benign, showing, for instance, L.P. with her cat or her siblings. Others, however, were of L.P. wearing her mother's clothing and lingerie and some were sexually suggestive. The defendant told L.P. that if she told anyone about the photographs, or if anyone found out about them, she would be taken from her family.

On one occasion, the defendant asked L.P. to take off all of her clothes for a picture. L.P. believed that the defendant made this request in her bedroom, but she could not remember. When L.P. refused, the defendant went downstairs and smoked a cigarette.

On September 20, 2007, H.W. discovered some of the photographs on the defendant's cell phone and contacted the police. The police recovered 155 images from the defendant's phone and its memory cards, of which 116 were of L.P. At trial, Detective Mark Dumas of the Concord Police Department testified that out of those 116 photographs, "a good percentage . . . were objectionable."

The defendant was tried on charges including one count of felony endangering the welfare of a child, which alleged that he solicited L.P. "to take off all her clothes for the purpose of creating a visual representation to a pornographic picture." At the close of the State's case, he moved to dismiss the felony charge for insufficient evidence. The trial court denied the motion and the jury returned a guilty verdict on that charge.

■ On appeal, the defendant argues that there was insufficient evidence to find him guilty of felony endangering the welfare of a child. Our standard for review of the trial court's denial of a defendant's motion to dismiss based upon the sufficiency of the evidence is well established.

> To prevail upon his challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt. Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation.

*State v. Fandozzi*, 159 N.H. 773, 782 (2010) (quotation omitted).

The defendant was charged with the statutory variant of child endangerment set forth in RSA 639:3, III, which provides in part:

> [T]he solicitation by any person of a child under the age of 16 to engage in sexual activity as defined by RSA 649-A:2, III for the purpose of creating a visual representation as defined in RSA 649-A:2, IV, or to engage in sexual penetration as defined by RSA 632-A:1, V, constitutes endangering the welfare of such child.

At the time the charged act was committed, RSA 649-A:2, III defined "[s]exual activity" as:

> human masturbation, the touching of the actor's or other person's sexual organs in the context of a sexual relationship, sexual intercourse actual or simulated, normal or perverted, whether alone or between members of the same or opposite sex or between humans and animals, any lewd exhibitions of the genitals, flagellation or torture.

RSA 649-A:2, III (2007) (amended 2008). The specific sexual activity at issue here is a lewd exhibition of the genitals.

■ The legislature has not defined what constitutes a lewd exhibition of the genitals, nor have we directly addressed the issue. We find instructive the factors articulated in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd*, 813 F.2d 1231 (9th Cir. 1987), *and aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), to "determin[e] whether a visual depiction of a minor constitutes a lascivious exhibition of the genitals or pubic area." *Dost*, 636 F. Supp. at 832 (quotation omitted). We discern no meaningful distinction between the terms "lewd" and "lascivious." *See United States v. Wiegand*, 812 F.2d 1239, 1243 (9th Cir. 1987) (noting that " '[l]ascivious' is no different in its meaning than 'lewd' "). We also accept the defendant's contention that a visual depiction of mere nudity of a child, without more, is not a lewd exhibition of the genitals. *See Tovar v. State*, 165 S.W.3d 785, 790, 791 (Tex. App. 2005) (noting that offenses "requir[ing] evidence of lewd exhibition of genitals by [a] child" do "not criminalize mere nudity of minors").

■ Under the *Dost* analysis for determining the lewdness of a visual depiction, "the trier of fact should look to the following factors, among any others that may be relevant in the particular case," *Dost*, 636 F. Supp. at 832:

    1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

    2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

    3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

    4) whether the child is fully or partially clothed, or nude;

    5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

    6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* Not all factors must be present to reach a determination that a visual depiction is a lewd exhibition of the genitals. *See id.*

The defendant argues that the evidence at trial was insufficient to prove that the defendant solicited from L.P. a lewd exhibition of the genitals. He contends that his "request did not mention L.P.'s genitals, anything specific about the proposed picture, or any direction as to posing other than a request that she be unclothed." He asserts that the evidence proved only that he "requested a naked picture of L.P." Notably, he "does not dispute

the sufficiency of the evidence of his purpose to create a visual representation of a lewd exhibition of L.P.'s genitals."

■ The State argues that the defendant's request for a nude picture must be viewed "in the context of all his behavior toward [L.P.] and the photographs he had actually taken," and that taken in that light, "the evidence was then sufficient to show that he was soliciting her to engage in a lewd exhibition of her genitals." We agree that "viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State," *Fandozzi*, 159 N.H. at 782 (quotation omitted), a rational trier of fact could have concluded that the defendant solicited L.P. for a photograph that would constitute a lewd exhibition of the genitals under the *Dost* analysis.

L.P. testified about pictures taken of her by the defendant that she was not, in the prosecutor's words, "okay with." She stated these pictures were taken in her bedroom or her mother's bedroom. She testified that the defendant would bring her articles of either her or her mother's clothing and tell her to put them on. He would also "tell [her] to do poses." The jury saw at least seven photographs, connected to the seven misdemeanor counts, that showed L.P. in sexually suggestive poses and/or settings, wearing sexually suggestive clothing. Some of the photographs cropped out L.P.'s head, while some focused on her breasts or buttocks. The jury could reasonably conclude that these visual depictions were "intended or designed to elicit a sexual response in the viewer." *Dost*, 636 F. Supp. at 832. L.P.'s testimony affirmed that on one occasion, the defendant asked her to take all her clothes off for a picture. In the context of such evidence, a reasonable jury could infer that the defendant's solicitation of a nude photograph was a request for a picture similar to the seven photographs underlying the misdemeanor charges, and thus was a request for a picture that would satisfy most, if not all, of the *Dost* factors.

The defendant argues, however, that the photographs in evidence and the defendant's other actions cannot be used to inform his request for a nude picture because L.P.'s testimony did not establish the order in which the events occurred. He argues:

> Without evidence that [his] other actions took place before his request, and therefore contributed to its meaning, these other acts do not supply a context sufficient to prove that, in asking her to remove her clothes for a picture, he communicated a request that she submit to a photograph amounting to a lewd exhibition of her genitals.

We disagree.

First, we disagree that there was no evidence of an order of events. The evidence established that the solicitation took place between June and September 2007. Detective Dumas testified that the recovered images did not contain "access data," so he could not determine the specific dates on which they were taken or deleted. Nevertheless, he stated that "within th[e] 116 [photographs of L.P.], there appeared to be clearly somewhere in a series of photographs, and then there also appeared to be, what I would describe, a progression of photographs. They were readily apparent when I looked at that 116." He further testified:

> So there was a range of photos I was looking at. That range went from artistic-type photographs, like you'd expect to see a child in a catalog with maybe colorful clothes in a funny hat, posing. They were very benign in nature. And then there were ones that, appeared to me, very sexually oriented in nature.

In addition, the prosecutor asked L.P. whether "there [were] ever any pictures that [the defendant] took that were just kind of silly, fun pictures," to which L.P. responded, "When he first got the phone."

■ "The trier of fact may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom." *State v. Kelley*, 159 N.H. 449, 455 (2009). A reasonable jury could infer from Dumas' and L.P.'s testimony that there was a certain order to the photographs taken, progressing from benign to sexually suggestive. Although the evidence did not pinpoint when the solicitation of a nude photograph occurred in relation to other acts of the defendant or the suggestive pictures actually taken, the jury could draw an inference as to when, in the progression described by Dumas and L.P., and in the context of all of the photographs taken, such a request likely took place. An inference that the request would have followed at least some of the sexually suggestive clothed photographs would not be unreasonable.

Furthermore, we cannot say that the jury could not interpret the defendant's request for a nude photograph in light of the suggestive photographs of L.P. clothed, as well as his other acts, even if they took place after the request. The defendant's citation of a case for the proposition that prior acts can inform a request, *see Foster v. Com.*, 369 S.E.2d 688, 697 (Va. Ct. App. 1988), does not establish the converse proposition that *subsequent* acts may *not* supply meaning to a solicitation. We note that in *People v. Braddock*, 809 N.E.2d 712, 720 (Ill. App. Ct. 2004), the court found that the meaning of words constituting a solicitation for prostitution was "rein-force[d]" by words the defendant spoke after the solicitation. In addition, in the context of criminal threatening, some courts have ruled that subsequent

acts can give meaning to ambiguous words alleged to constitute the offense. Thus, for instance, in *People v. Martinez*, 62 Cal. Rptr. 2d 303 (Ct. App. 1997), the court stated that the "[d]efendant's activities after the threat give meaning to the words and imply that he meant serious business when he made the threat." *Martinez*, 62 Cal. Rptr. 2d at 309; *see People v. Mendoza*, 69 Cal. Rptr. 2d 728, 732, 733 (Ct. App. 1997), *superseded by statute on other grounds, as stated in People v. Franz*, 106 Cal. Rptr. 2d 773 (Ct. App. 2001). We conclude that the jury was entitled to consider all of the surrounding circumstances to determine the meaning of the defendant's request for a nude photograph of L.P., particularly when that request occurred some time during a continuing series of events producing 116 photographs of L.P., many of which were sexually suggestive, over a relatively short period of time.

The defendant next argues that the evidence was insufficient to prove that he solicited L.P. at all. He cites *Petition of State of N.H. (State v. Laporte)*, 157 N.H. 229 (2008), in which we stated that "[t]he plain meaning of solicitation is 'to entice' or 'to strongly urge.'" *Laporte*, 157 N.H. at 232 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2169 (unabridged ed. 2002)). He then argues that "[t]hese words connote a determined entreaty through methods beyond simply making a request. Conversely, solicit does not mean 'to ask.'" The defendant concedes that he may not have preserved this argument below, but asserts that "the trial court committed plain error in finding sufficient evidence."

■ Our plain error rule requires: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *State v. MacInnes*, 151 N.H. 732, 737 (2005). We find no error.

■ We need not decide whether, as the State urges, solicit does "mean[] to ask," *People v. Pfaffle*, 632 N.W.2d 162, 171 (Mich. Ct. App. 2001), because we agree with the State's alternative argument that the evidence in this case was sufficient to prove solicitation under the defendant's own definition of "to entice." The State argues:

> [T]he defendant's behavior here easily met the definition of "to entice.". . . [T]he evidence of the defendant's request . . . [should be viewed] in the entire context of the case, where the defendant knew of [L.P.'s] interest in modeling and took advantage of that interest by causing [L.P.] to pose for 116 other photographs, including many that were inoffensive, but at least seven of which

were sexually suggestive. The jury could infer that he was building up to the request at issue by progressively encouraging [L.P.'s] ambition.

(Citations omitted.) We agree that in light of all the evidence, a rational jury could find that the defendant enticed L.P. by playing to her ambition to be a model and that "his request that she pose nude was the culmination of a sequence intended to gain her trust and confidence so that she would pose for pornography."

We conclude that the evidence was sufficient to prove both that the defendant engaged in "solicitation" within the meaning of RSA 639:3, III and that the object of the solicitation was a "lewd exhibition[] of the genitals" within the meaning of RSA 649-A:2, III.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.