# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0488, <u>State of New Hampshire v. Wilfred Bergeron</u>, the court on September 16, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Wilfred Bergeron, appeals his convictions on ten counts of possession of child pornography. <u>See</u> RSA 649-A:3 (Supp. 2015). He argues that the Superior Court (<u>Brown</u>, J.) erred in: (1) denying his motion to suppress evidence seized from his computer, and granting the State's motion to reexamine the computer, in violation of his rights under the State and Federal Constitutions; and (2) finding the evidence supporting two of the convictions to be sufficient to prove that the images were of a child engaged in sexually explicit conduct. We first address the defendant's constitutional arguments under the State Constitution and rely upon federal law only to aid in our analysis. <u>State v. Ball</u>, 124 N.H. 226, 231-33 (1983).

The defendant first argues that the trial court erred in denying his motion to suppress evidence taken from his computer because, he asserts, the police entered his home and seized the computer without a warrant or voluntary consent. "When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous." <u>State v. Mouser</u>, 168 N.H. 19, 22 (2015).

"A voluntary consent free of duress and coercion is a recognized exception to the need of both a warrant and probable cause." <u>State v. Socci</u>, 166 N.H. 464, 473 (2014) (quotation omitted). "The burden is on the State to prove, by a preponderance of the evidence, that the consent was free, knowing and voluntary." <u>Id</u>. (quotation omitted). "The validity of the consent is determined by examining the totality of the circumstances." <u>Id</u>. (quotation omitted). "We will disturb the trial court's finding of consent only if it is not supported by the record." <u>Id</u>. (quotation omitted).

The record shows that on March 16, 1989, the defendant was convicted of felonious sexual assault and aggravated felonious sexual assault against a boy under thirteen years of age. As a result of his conviction, the defendant was required to register all online identifiers and meet with his local police

department's sex offender compliance unit four times a year. See RSA ch. 651-B (2007 & Supp. 2015). On July 31, 2013, Manchester police detective Craig received seven "cyber tips" suggesting that the defendant was collecting child pornography on his computer using an e-mail account that he had reported to police he no longer used. On November 15, 2013, at approximately 10:00 a.m., Craig and Manchester police detective Caldwell visited the defendant's apartment. Craig was dressed in plain clothes, and Caldwell was in his uniform. Before entering the defendant's apartment, the detectives identified themselves as Manchester police officers and explained that they wished to discuss his possible registration violations and possible possession of child pornography. The defendant invited the detectives into his apartment. The detectives spoke with him in his kitchen. When they asked to see his computer, the defendant led them upstairs. After some further conversation, Craig asked the defendant if he could take the computer, and the defendant agreed. The detectives left the apartment with the computer and without incident.

The defendant argues that based upon the totality of the circumstances, he did not voluntarily consent to the detectives' entry into his apartment or to the seizure of his computer. He asserts that the consent was not voluntary because the detectives confronted him with a number of accusations, including failure to register an online identifier and possession of child pornography, and that they pursued their questioning believing that he was guilty and that they already had enough information for a warrant. He asserts that the officers stood in close physical proximity to him within the confines of his small kitchen, and that they never advised him of his Miranda rights, see Miranda v. Arizona, 384 U.S. 436 (1966), or obtained a written consent to seize the computer.

The trial court found, however, that the detectives "did not make any outright accusations or assumptions of guilt." "Rather," the court found, the detectives "spoke in a conversational tone" and "simply explained why they were present." The court found that, "[o]nce inside his apartment, [the] defendant was able to move without interference," and that he "sat and stood as he pleased." The court found that the defendant was not in custody, and thus not entitled to Miranda warnings, and that while "the better practice would have been to obtain a written consent" to seize the computer, the failure to do so did not "invalidate [the] defendant's consent." We conclude that, considering the totality of the circumstances, the trial court's findings that the defendant voluntarily consented to the detectives' entry into his apartment and to the seizure of his computer were supported by the record and not clearly erroneous. See Mouser, 168 N.H. at 22; Socci, 166 N.H. at 473.

Alternatively, the defendant argues, the trial court erred in crediting the offers' testimony, and in rejecting his conflicting testimony, to find that he voluntarily consented to the search. The defendant testified that the detectives

2

entered his apartment without being invited. He testified that Caldwell stood only one foot away from him, backed him into his living room, yelled at him, and accused him of looking at "dirty pictures" and lying about his registration information. The defendant testified that he felt threatened and did not believe that he could refuse to show the detectives his computer. The defendant testified that Craig told him that if he did not allow him to seize the computer, he would return with "a piece of paper" and "trash" the apartment.

The trial court found, however, that the defendant's testimony "appeared rehearsed," and that on cross examination, he "would frequently provide evasive responses." The court also found that the defendant's testimony was inconsistent with his earlier e-mails. The court concluded that the defendant's testimony was "not credible." By contrast, the court found the detectives' testimony to be "much more consistent, cohesive, and credible." "We will not overturn the credibility ruling of the factfinder, who is in the best position to make such a determination." State v. Seymour, 140 N.H. 736, 748 (1996) (quotation omitted). Based upon this record, we conclude that the trial court was not compelled to reject the detectives' testimony or to accept the defendant's testimony. See Mouser, 168 N.H. at 22.

Accordingly, we conclude that the seizure of the defendant's computer did not violate Part I, Article 19 of the State Constitution. Because the Federal Constitution provides no greater protection than the State Constitution under these circumstances, see United States v. Nishnianidze, 342 F.3d 6, 14 (1st Cir. 2003); State v. Johnston, 150 N.H. 448, 454 (2004), we reach the same result under the Federal Constitution.

The defendant next argues that the trial court erred in granting the State's motion to reexamine his computer because, he asserts, the State lacked probable cause. Part I, Article 19 of the State Constitution requires that search warrants be issued only upon a finding of probable cause. See State v. Letoile, 166 N.H. 269, 272 (2014). "Probable cause exists if a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction." Id. (quotation omitted). The record shows that the detectives obtained a warrant to search the defendant's computer based upon the information contained in the seven cyber tips and from their November 15, 2013 encounter with the defendant. The defendant filed a motion to suppress, and the State, in response, filed its objection and a motion to reexamine the defendant's computer. See State v. Gubitosi, 151 N.H. 764, 767 (2005) (noting preferred method of obtaining evidence against a defendant already before superior court is by motion to that court). On appeal, the defendant argues that he was in custody during his November 15, 2013 encounter with the police and that statements he made to the detectives without Miranda warnings should have been excised from the State's motion to reexamine the computer. See State v. Orde, 161 N.H. 260,

3

269 (2010) (reviewing court excises illegally obtained information to determine whether remaining information establishes probable cause).

"Custody entitling a defendant to Miranda protections requires formal arrest or restraint on freedom of movement of the degree associated with formal arrest." State v. McKenna, 166 N.H. 671, 676 (2014) (quotation omitted). "In the absence of formal arrest, we must determine whether a suspect's freedom of movement was sufficiently curtailed by considering how a reasonable person in the suspect's position would have understood the situation." Id. at 676-77 (quotation omitted). "To determine whether a reasonable person in the defendant's position would believe himself in custody, the trial court should consider the totality of the circumstances of the encounter including, but not limited to, factors such as the number of officers present, the degree to which the suspect was physically restrained, the interview's duration and character, and the suspect's familiarity with his surroundings." Id. at 677 (citation and quotation omitted). "Because the ultimate determination of custody requires an application of a legal standard to historical facts, it is not merely a factual question but a mixed question of law and fact." State v. Jennings, 155 N.H. 768, 772 (2007) (quotation omitted). "We will not overturn the trial court's factual findings relevant to the question of custody unless they are contrary to the manifest weight of the evidence." Id. at 772-73. We review the ultimate determination of custody de novo. Id. at 772.

In this case, the defendant was in familiar surroundings during the November 15, 2013 encounter, as it took place in his apartment. The defendant knew Caldwell and described his previous interactions with him as cordial. The defendant argues that he was in custody because the detectives initiated the contact, stood in close physical proximity to him within the confines of his small kitchen, confronted him with specific accusations, and did not inform him that he could terminate the encounter. However, the court found that the detectives "spoke in a conversational tone," and that they "did not make any outright accusations or assumptions of guilt." The court also found that, "[o]nce inside his apartment, [the] defendant was able to move without interference," that he "sat and stood as he pleased." In response to Craig's questioning, the defendant stated that he forgot to register the e-mail account and that he had deleted child pornography from his computer a few months earlier. Considering the totality of the circumstances of the encounter, see McKenna, 166 N.H. at 677, we conclude that the defendant was not in custody when he made these statements. See Jennings, 155 N.H. at 772. Therefore, the trial court did not err by failing to excise the statements.

The defendant next argues that the State lacked probable cause because the information contained in the warrant was stale. The cyber tips Craig received on July 31, 2013 referenced e-mails dated February 21, 2012, and February 24, 2013, and the defendant's computer was not seized until November 15, 2013.

4

"A lapse of time, alone, between a suspected crime and the issuance of a warrant is not conclusive as to probable cause; rather it must be considered with all the other circumstances, including the nature of the criminal activity and the items sought." State v. Marcotte, 123 N.H. 245, 248 (1983). We have recognized that collectors of child pornography often retain their material for a long time. See State v. Kirsch, 139 N.H. 647, 650-51 (1995) ("[I]t would be reasonable for an issuing magistrate to conclude that a person charged with sexual exploitation of children through photographs and similar items would be likely to retain them for an indefinite period." (quotation omitted)). "In addition, the expertise and experience of the law enforcement officer are relevant to the probable cause determination." State v. Bell, 164 N.H. 452, 456 (2012) (quotation omitted). On November 15, 2013, the defendant told the detectives that he deleted child pornography from his computer a few months earlier. In support of its motion to reexamine the computer, the State submitted an affidavit from a police detective who stated that "deleted" files or data often remain on a computer's storage system and can be recovered months or years after their deletion. The detective also stated that, in his experience, persons who collect sexually explicit visual images of children often do not completely destroy them but keep them for long periods of time.

Based upon this record, we conclude that for purposes of Part I, Article 19 of the State Constitution, there was probable cause to believe that the computer contained evidence that the defendant possessed child pornography. See Letoile, 166 N.H. at 272. Because the Federal Constitution provides no greater protection than the State Constitution under these circumstances, see United States v. Irving, 452 F.3d 110, 125 (2nd Cir. 2006); Letoile, 166 N.H. at 274, we reach the same result under the Federal Constitution.

The defendant next argues that the evidence supporting two of the convictions was insufficient to prove that the images were of a child engaged in sexually explicit conduct. He concedes that he did not raise this issue in the trial court and seeks review under our plain error rule. See Sup. Ct. R. 16-A. The State counters that we cannot consider this issue, even under our plain error rule, because the defendant waived his right to challenge the sufficiency of the evidence when he agreed to a stipulated facts trial.

The record shows that, prior to trial, the defendant signed a waiver of his "right to challenge this process or to challenge the sufficiency of the evidence presented by the State in the offer of proof." The defendant argues that, regardless of the waiver language, the parties expected the trial court to make an independent finding as to whether the images depicted child pornography, and that, for this reason, the trial court looked at the images with counsel in chambers before finding the defendant guilty. We will assume, without deciding, that the defendant did not waive his right to challenge the sufficiency of the evidence to prove that the images depict a child engaged in sexually explicit conduct.

5

The State also argues that the defendant failed to provide a sufficient record to decide the issue because there is no record of the conference held in chambers.  See State v. Winward, 161 N.H. 533, 542 (2011) (appealing party has burden to provide sufficient record to decide his issues on appeal).  However, the record shows that, prior to the chambers conference, the trial court advised the defendant, "we're going in to look at the images.  There won't be anything else that's discussed in chambers."  Nothing in the record shows that the parties presented any evidence other than the images during the conference.  Accordingly, we conclude that the record is sufficient to address this issue.

"To find plain error:  (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings."  State v. Houghton, 168 N.H. 268, 273 (2105) (quotation omitted).  "When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State."  Id. at 271.

RSA 649-A:3 prohibits the possession of "any visual representation of a child engaging in sexually explicit conduct."  RSA 649-A:3, I(a).  "'Child' means any person under the age of 18 years."  RSA 649-A:2, I (Supp. 2015).  RSA 649-A:2, III (Supp. 2015) defines "sexually explicit conduct" as:

> human masturbation, the touching of the actor's or another person's sexual organs in the context of a sexual relationship, sexual intercourse actual or simulated, normal or perverted, whether alone or between members of the same or opposite sex or between humans and animals, or any lewd exhibitions of the buttocks, genitals, flagellation, bondage, or torture.  Sexual intercourse is simulated when it depicts explicit sexual intercourse that gives the appearance of the consummation of sexual intercourse, normal or perverted.

To determine whether an image depicts "a lewd exhibition of the genitals" we have found the following factors to be instructive:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

> (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

(3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4) whether the child is fully or partially clothed, or nude;

(5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and

(6) whether the sexual depiction is intended or designed to elicit a sexual response in the viewer.

State v. Lopez, 162 N.H. 153, 156 (2011).

The defendant argues that the image depicted in file "12.jpg" in indictment 216-14-CR-1066 (ID# 999222c) does not sufficiently depict a child under the age of eighteen years engaged in "sexually explicit conduct." "[T]he determination of the age of the subjects in a photograph is for the trier of fact, relying on everyday observations and common experiences." Houghton, 168 N.H. at 272 (brackets and quotation omitted). We have reviewed the image in file "12.jpg." It shows a young male standing nude before a mirror holding a cellphone or camera. His physical features show that he has not yet reached full maturity. See id. Although his penis appears to be flaccid, he is naked, and his complete face is not shown, making his penis the focal point of the image. See Lopez, 162 N.H. at 156. This image of a young male, given its focus on his genitals, is sexually suggestive. See id.

We agree with the State that although the defendant relies exclusively upon the image itself to argue that the evidence is insufficient, the record shows that the defendant strongly prefers images of young boys, "preferably pre-teen to early teen with little or no clothing," as he wrote in one e-mail. A fact-finder could reasonably consider this evidence to support the conclusion that the images on the defendant's computer depict boys under the age of eighteen. See id. at 271 ("When considering a challenge to the sufficiency of the evidence, we . . . consider all the evidence and all reasonable inferences therefrom." (emphases added)).

Finally, the defendant argues that the image depicted in indictment 216-14-CR-1066 (ID# 999215C) does not sufficiently depict "sexually explicit conduct." We have also reviewed this image. It depicts a young boy holding and looking at his penis. The focal point of the image is the boy's penis. See Lopez, 162 N.H. at 156. We conclude that a fact-finder could determine that the image is sexually suggestive and is designed to elicit a sexual response in a viewer. See id.

Considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State, see Houghton, 168 N.H. at 271, we

7

conclude that the evidence supporting these two convictions is sufficient to prove, beyond a reasonable doubt, that the images depict children under the age of eighteen years engaged in sexually explicit conduct.  Accordingly, we find no plain error.  <u>See</u> <u>id</u>. at 273 (for plain error, there must be error).

<u>Affirmed</u>.

Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**
