NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2017-0280


THE STATE OF NEW HAMPSHIRE

v.

ROBERT NORMAN

Argued:  May 15, 2018
Opinion Issued:  July 6, 2018


Gordon J. MacDonald, attorney general (Katherine A. Triffon, attorney, on the brief and orally), for the State.


Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.


HANTZ MARCONI, J.  The defendant, Robert Norman, appeals his convictions on seven counts of possession of child sexual abuse images following a bench trial on stipulated facts in Superior Court (Brown, J.).  See RSA 649-A:3, I(a) (2016).  On appeal, he argues that the superior court erred by denying his motion to suppress in which he argued that the affidavit submitted in support of the search warrant application failed to establish probable cause that his electronic devices would contain child sexual abuse images.  He also argues that the evidence was insufficient to prove, beyond a reasonable doubt, that the images associated with the seven indictments depict

sexually explicit conduct.  See RSA 649-A:2, III (2016), :3, I(a).  He further challenges three of the indictments on the ground that the images associated with them do not depict a child.  See RSA 649-A:2, I (2016), :3, I(a).  We reverse and remand.

I.  Motion to Suppress

A.  Affidavit

The following facts are drawn from the affidavit submitted in support of the search warrant application.  In February 2016, members of the Hillsborough County Street Crimes Task Force were conducting surveillance in the Wal-Mart parking lot in Amherst.  The officers observed a man, later identified as the defendant, who appeared to be passed out in the driver's seat of his pick-up truck.  Concerned that he might have overdosed, they approached the vehicle.

Upon reaching the vehicle, the officers knocked on the window, and the defendant sat up.  They noticed that his pants were pulled down to his ankles and that his genitals were exposed.  They further observed a cell phone, and a laptop computer displaying a partially nude adult female in a provocative position.

After some discussion with the defendant, he consented to a search of his laptop, cell phone, and vehicle.  On the laptop, the police found "numerous folders . . . which contained images of women in various stages of undress and positions."  Interspersed among those images were images of children whom the officers estimated were "between the ages of 6 and 15."  "The younger of the children were in sundresses," and "[t]he teenage females were in cheerleader outfits."  When questioned about the images, the defendant stated that he did not have any nieces or nephews and that there were no photographs of family members on his computer.  The defendant also "admitted that he was inclined to have images of younger females if they were wearing pantyhose or tights."

The defendant was subsequently arrested for indecent exposure and lewdness.  See RSA 645:1 (2016).  The police seized his cell phone, his laptop, and an external hard drive that they found in the vehicle.  At the police station, the defendant was questioned further about the images observed on his computer.  He told the police that "there were some folders on his laptop which contained pornography" and "estimated that there were approximately 500 images."  He denied that his cell phone contained pornography.  The defendant also stated that he used the external hard drive found in his vehicle "to back up his computer," and that he "used the public access wifi service at the Nashua Library to access the Torrent website to download movies and television shows . . . so that the downloads would not be traced back to him."

2

The defendant told the police that he does not use "the Torrent network for pornography"; instead, he "uses Google and Yahoo!" to search for pornography.

"When asked specifically about the images of the children, [the defendant] stated that the images sometimes appear when he searches for his fetishes[:] pantyhose, legs, and/or feet." The defendant told the police that, to his knowledge, none of the images were "of someone who is pre-teen." He "added that he likes 'cheesecake pictures,'" which are "images that are meant to be a tease, not nude, but suggestive." The officer-affiant who later applied for the search warrant averred that "[t]his description matches that of what officers observed mixed within the adult pornography observed," and that "[t]hese types of images are referred to as child erotica, which is typically a prelude to sexually explicit images of children."

The defendant was also questioned about his conduct in the pick-up truck. He initially told the police that "his pants were down as a result of preparing to change his underwear when his girlfriend called," but later "admitted that his laptop was open with one of his images to 'stimulate' himself."

During the interview, the police questioned the defendant about "a similar situation" that had occurred in Salem. The defendant claimed that he was arrested by the Salem police for disorderly conduct after giving someone the middle finger. The interviewing detectives contacted the Salem police who reported that the defendant had actually been arrested for indecent exposure and lewdness as well as disorderly conduct in August 2014, after he was found in a parked vehicle in a similar state of undress, viewing adult pornography on his laptop. Although this information established that the defendant had not been fully forthcoming in his description of his Salem arrest, it provided no evidence that he had been found in possession of child pornography.

Near the end of the February 2016 interview, the defendant refused a request by the police to provide the password to his laptop, stating that "there were banking records on his computer." The police thereafter applied for a warrant to search the defendant's laptop, external hard drive, and cell phone for evidence of the crime of possession of child sexual abuse images.

In addition to the information recounted above, the affidavit supporting the search warrant application contained information based on the training and experience of the officer-affiant. He averred that, "[b]ased on [his] previous investigative experience related to child pornography investigations, [his] training, and the experience of other law enforcement officers with whom [he has] had discussions, [he] know[s] there are certain characteristics common to individuals who . . . possess . . . child pornography." He averred that such individuals: (1) "may receive sexual gratification, stimulation, and satisfaction from . . . fantasies they may have [when] viewing children engaged in sexual

3

activity or in sexually suggestive poses, . . . in person, in photographs, or other visual media, or from literature describing such activity"; (2) "may collect sexually explicit or suggestive materials" and "often use these materials for their own sexual arousal and gratification"; (3) "almost always possess and maintain their 'hard copies' of child pornographic material . . . in the privacy and security of their home" and "typically retain pictures, films, photographs, . . . child erotica, and videotapes for many years"; (4) "often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer"; (5) "may correspond with and/or meet others to share information and materials" related to child pornography; (6) "generally have knowledge about how to access hidden and secretive cloud based locations involved with child pornography"; and (7) "typically prefer not to be without their child pornography for a prolonged time period."

The Circuit Court (Ryan, J.) granted the search warrant application based upon the submitted affidavit. A forensic examination of the defendant's laptop and external hard drive revealed the images that later served as the basis for the charges of possession of child sexual abuse images. Each charge was based upon a separate digital image found on the defendant's electronic devices. Before trial, the defendant moved to suppress the images, arguing that the affidavit supporting the search warrant application failed to establish probable cause. The superior court denied the motion, after determining that the affidavit established "a fair probability that evidence of child pornography would be found on [the] defendant's computer and hard drive."

B. Analysis

The defendant argues that the search warrant was not supported by probable cause, in violation of the State and Federal Constitutions. See N.H. CONST. pt. I, art. 19; U.S. CONST. amends. IV, XIV. We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

Part I, Article 19 of the State Constitution requires that search warrants be issued only upon a finding of probable cause. State v. Ball, 164 N.H. 204, 207 (2012). Probable cause to search exists "if a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction." Id.

The task of the issuing magistrate "is to make a practical, common-sense decision whether[,] given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (quotation omitted); see Illinois v. Gates, 462 U.S. 213, 238 (1983). Although an affidavit may establish probable cause to search without the observance of contraband at the place to be searched, to meet

4

constitutional muster, it must evince a sufficient nexus between the illicit objects and the place to be searched.  Ball, 164 N.H. at 207.

We afford much deference to the magistrate's probable cause determination.  Id. at 208.  Our task on appeal is "to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Gates, 462 U.S. at 238-39 (quotation, ellipsis, and brackets omitted); see Ball, 164 N.H. at 207.  In so doing, we may consider only the information that was brought to the magistrate's attention, which in this case is restricted to the information set forth in the affidavit supporting the warrant application.  See Ball, 164 N.H. at 207.

Like the magistrate, we review the affidavit in a common-sense manner. Id.  We "will not invalidate warrants by reading the supporting affidavit in a hypertechnical sense," and we resolve "close cases by the preference to be accorded to warrants."  Id. at 208 (quotation omitted); see Gates, 462 U.S. at 236.  Nevertheless, under this standard, we may properly conclude that a warrant is invalid because the magistrate's probable cause determination "reflected an improper analysis of the totality of the circumstances."  Ball, 164 N.H. at 207 (quotation omitted).  We review the superior court's decision regarding the sufficiency of the affidavit de novo.  See id.

The issue in this case is whether the affidavit provided the magistrate with a substantial basis for finding that there was a fair probability that the defendant's laptop, cell phone, or external hard drive contained child sexual abuse images.  A child sexual abuse image is an image that depicts a child engaged in "sexually explicit conduct."  RSA 649-A:3, I(a).  A "child" is a person younger than 18 years of age.  RSA 649-A:2, I.  "Sexually explicit conduct" includes: masturbation; touching one's own "sexual organs" or those of another "in the context of a sexual relationship"; actual or simulated "normal or perverted" sexual intercourse, "whether alone or between members of the same or opposite sex"; and "any lewd exhibitions" of the buttocks or genitals.  RSA 649-A:2, III.

Viewing the affidavit in a common-sense manner and considering the totality of the circumstances set forth therein, we conclude that the magistrate did not have a substantial basis for finding that there was a fair probability that child sexual abuse images would be found on the defendant's electronic devices.  In this case, the images that the officers viewed on the defendant's laptop were of adult women "in various stages of undress and positions," girls in sundresses, and female teenagers in cheerleader outfits.  The affidavit did not allege that any of the images the police viewed constituted child sexual abuse images.  See United States v. Edwards, 813 F.3d 953, 963, 965 (10th Cir. 2015).  On appeal, the State does not contend otherwise.  The defendant's inclination to view pornographic images of adult women, images of girls in sundresses and teenagers in cheerleader outfits, or images of "younger

females" in pantyhose or tights is insufficient to support the inference that he would commit the crime of possessing child sexual abuse images and that his electronic devices would contain such images. See Jacobson v. United States, 503 U.S. 540, 551 (1992).

"In other contexts, courts are reluctant to presume that persons are inclined to engage in certain illegal activity based on having engaged in a particular legal activity." Edwards, 813 F.3d at 964. In Jacobson, for example, an entrapment defense case, the United States Supreme Court found that the petitioner was "acting within the law" when he received magazines containing "sexually explicit depictions of children" because, at the time, that conduct was lawful. Jacobson, 503 U.S. at 551. The Court ruled that his receipt of the magazines could not establish his predisposition to receive or possess child pornography "independent of the Government's acts," as required to defeat his entrapment defense. Id. at 554. As the Court explained, "proof that petitioner engaged in legal conduct and possessed certain generalized personal inclinations is not sufficient evidence to prove beyond a reasonable doubt that he would have been predisposed to commit the crime charged independent of the Government's coaxing." Id. at 551 n.3. "Evidence of predisposition to do what once was lawful is not, by itself, sufficient to show predisposition to do what is now illegal, for there is a common understanding that most people obey the law even when they disapprove of it." Id. at 551.

"Admittedly, Jacobson is distinguishable not only because of its focus on entrapment but also because . . . [it] concerns the quantum of evidence required for proof beyond a reasonable doubt at trial." Edwards, 813 F.3d at 964 (citations omitted). "Nevertheless, we find its reasoning instructive on the danger of assuming that legal conduct standing alone suggests the actor is also inclined to engage in criminal conduct." Id.

We acknowledge that "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts," Gates, 462 U.S. at 243 n.13, and that "innocent or legal conduct may be infused with the degree of suspicion necessary to support a finding of probable cause when examined through the lens of those versed in the field of law enforcement," Edwards, 813 F.3d at 965 (quotations omitted). However, even when we view the affidavit through the insight provided by the officer-affiant's law enforcement experience, we conclude that it failed to provide a link between the viewing of legal adult pornography and so-called "child erotica" and the possession of child sexual abuse images sufficient to establish a fair probability that such illegal images would be found on the defendant's laptop, external hard drive, and/or cell phone. See id. at 964-69.

6

The affidavit contained only one allegation purporting to link the possession of "child erotica" with the possession of child sexual abuse images: the affiant's averment that "child erotica . . . is typically a prelude to sexually explicit images of children." However, the affiant did not provide any foundation for this statement. Rather the affidavit posited that individuals who have sexual images of children typically retain those images, including child erotica, for many years. If the officer-affiant meant that people who possess child pornography have been shown to have possessed "child erotica" before possessing the child pornography, we have no reason to question that this may "typically" be true. However, the problem here is that there was no evidence that the defendant possessed child pornography — instead, that was what the police were hoping to learn by obtaining the warrant. If what the officer-affiant meant, however, was that people who possess only non-pornographic images of children "typically" also possess child pornography, the affidavit provided no basis on which to assess the accuracy of that assertion.

In addition, the affidavit included allegations about the common characteristics of individuals who possess child pornography. However, those allegations were "not drafted with the facts of this case or this particular defendant in mind." United States v. Weber, 923 F.2d 1338, 1345 (9th Cir. 1990). The officer-affiant averred that he knew that "there are certain characteristics common to individuals who . . . possess . . . images of child pornography" and that the defendant "likely displays" those characteristics. However, the affidavit failed to allege any facts that would provide a substantial basis for believing that the defendant actually exhibited those characteristics.

For example, the officer-affiant averred that one common characteristic of individuals who possess child pornography is that they receive sexual gratification "from contact with children" or "from fantasies they may have [when] viewing children engaged in sexual activity or in sexually suggestive poses." Yet, there were no allegations that the defendant had any contact with children or that he fantasized about children. Similarly, the officer-affiant averred that individuals who possess child pornography may collect "sexually explicit or suggestive materials" featuring children for "their own sexual arousal and gratification" or use such "materials to lower the inhibitions of children they are attempting to seduce," yet there were no allegations that the defendant collected such materials or that he used them to seduce children. Nor does the affidavit's general statement that individuals who possess child pornography "often maintain their child pornography images" in a computer suffice. "There simply is nothing in this statement indicating that it is more (or less) likely that [the defendant's] computer might contain images of child pornography." United States v. Falso, 544 F.3d 110, 122 (2d Cir. 2008). In short, the officer-affiant's assertions about the common characteristics of those who possess child sexual abuse images do not establish a fair probability that the defendant shared those characteristics. See Edwards, 813 F.3d at 969.

7

In this case, the defendant was viewing pornographic images of adult women, not of children. The other images the officers viewed on his laptop were of girls in sundresses and female teenagers in cheerleader outfits, and, although the officer-affiant describes those images as "child erotica,"[1] he does not aver that they constitute child sexual abuse images. The fact that the defendant's laptop contained pornographic images of adult women and non-pornographic images of "younger females" did not provide a substantial basis for the magistrate to find probable cause that it also contained child sexual abuse images. See United States v. Perkins, 850 F.3d 1109, 1120, 1122 (9th Cir. 2017) (holding that the defendant's "legal possession of two non-pornographic images" and two 20-year-old convictions for incest and child molestation were insufficient to support probable cause to search for child pornography). Accordingly, we reverse the superior court's conclusion to the contrary. Because the defendant has prevailed under the State Constitution, we need not reach his argument under the Federal Constitution. See Ball, 124 N.H. at 237.

## II. Sufficiency of the Evidence

Although we conclude that the evidence obtained from the search warrant should have been suppressed at trial, we address the defendant's argument that the evidence was insufficient to convict him because the State has not indicated whether it intends to retry him, and because, if the evidence was insufficient, "the Double Jeopardy Clauses of both the New Hampshire and United States Constitutions would preclude a new trial." State v. Gordon, 161 N.H. 410, 418 (2011) (quotation omitted). When analyzing the sufficiency of the evidence, we consider all of the evidence, including that which was erroneously admitted. Id.; see State v. Morrill, 169 N.H. 709, 718 (2017) (explaining that "although the evidence seized during the search . . . should not have been admitted at trial, we consider this evidence in assessing the defendant's challenge to the sufficiency of the evidence").

RSA 649-A:3 states, in relevant part, that "[n]o person shall knowingly . . . possess . . . any visual representation of a child engaging in sexually explicit conduct." RSA 649-A:3, I(a). The defendant argues that the evidence was insufficient to prove, beyond a reasonable doubt, that the images associated with the seven indictments depict "sexually explicit conduct." See RSA 649-A:2, III, :3, I(a). He further challenges three of the indictments on the ground that the images associated with them do not depict an individual younger than 18 years of age. See RSA 649-A:2, I (defining "[c]hild" as "any person under the age of 18 years").

When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether a rational trier of fact could

---

[1] We note that "child erotica" is a legally inexact term.

have found the essential elements of the crime beyond a reasonable doubt, considering all of the evidence and all reasonable inferences therefrom in the light most favorable to the State. State v. Houghton, 168 N.H. 269, 271 (2015). We will assume, without deciding, that the images are circumstantial evidence of the age of the individuals depicted. See id. "When the evidence is solely circumstantial, it must exclude all rational conclusions except guilt." State v. Lopez, 162 N.H. 153, 155 (2011) (quotation omitted). "Under this standard, however, we still consider the evidence in the light most favorable to the State and examine each evidentiary item in context, not in isolation." Id. (quotation omitted).

A. Age

The defendant contends that the evidence was insufficient to prove, beyond a reasonable doubt, that the images associated with indictments 1240145C, 1240148C, and 1240149C depict an individual younger than 18 years of age. "We have previously observed that the determination of the age of the subjects in a photograph is for the trier of fact, relying on everyday observations and common experiences." Houghton, 168 N.H. at 272 (quotation and brackets omitted). "In determining child pornography, based upon its everyday experiences, a trier of fact can determine from a photograph whether the subject is under the age of 18." Id. (quotation omitted).

Indictment 1240145C: The girl in the image associated with this indictment is very small in stature and appears to have no indicators of puberty. Her face is that of a young child.

Indictment 1240148C: The face of the girl in the image associated with this indictment appears to be that of a younger teenager. Her lack of body development suggests that she has not completed puberty.

Indictment 1240149C: The girl in the image associated with this indictment appears to be a young child. She is small in stature. There are no indicators that she has started puberty.

Viewing these images in the light most favorable to the State, we conclude that the evidence was sufficient for a rational trier of fact to have found, beyond a reasonable doubt, that these images depict girls younger than 18 years of age.

B. Sexually Explicit Conduct

The defendant also contends that the evidence was insufficient for a rational trier of fact to have found, beyond a reasonable doubt, that the images associated with the seven indictments depict "sexually explicit conduct." See RSA 649-A:3, I(a). "Sexually explicit conduct" is statutorily defined as:

9

human masturbation, the touching of the actor's or other person's sexual organs in the context of a sexual relationship, sexual intercourse actual or simulated, normal or perverted, whether alone or between members of the same or opposite sex or between humans and animals, or any lewd exhibitions of the buttocks, genitals, flagellation, bondage, or torture. Sexual intercourse is simulated when it depicts explicit sexual intercourse that gives the appearance of the consummation of sexual intercourse, normal or perverted.

RSA 649-A:2, III. The specific sexually explicit conduct at issue with these seven images is an alleged lewd exhibition of the buttocks or genitals.

The legislature has not defined what constitutes a lewd exhibition of the buttocks or genitals. See Lopez, 162 N.H. at 156. In Lopez, we identified the following factors as "instructive" in determining whether a visual depiction constitutes "a lewd exhibition of the genitals":

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Id. (quotation omitted). Not all of these factors must be present to conclude that a visual depiction is a lewd exhibition. Id.

Indictment 1240142C: The image associated with this indictment depicts a naked, prepubescent girl with strappy high heels and flowers in her hair. Her pose is unnatural; one of the cheeks of her buttocks is exposed.

Indictment 1240143C: The image associated with this indictment depicts a naked, prepubescent girl lying on her side displaying her buttocks as well as her genitals.

Indictment 1240145C: The image associated with this indictment depicts a naked, prepubescent girl lying on her stomach with her head resting on her hands, the position of her legs drawing attention to her naked buttocks.

Indictment 1240146C: The image associated with this indictment depicts a naked, prepubescent girl lying on her side, displaying her genitals.

Indictment 1240147C: The image associated with this indictment depicts a naked, prepubescent girl lying on her side in the water, with her legs spread apart, displaying her buttocks as well as her genitals.

Indictment 1240148C: The image associated with this indictment depicts a naked pubescent girl, buttock exposed, lying unnaturally, bent back on top of another naked female.

Indictment 1240149C: The image associated with this indictment depicts a prepubescent girl posing naked on a carpet, with her feet spread apart, displaying her genitals.

Based upon our review of the images in the light most favorable to the State, and after considering the above-enumerated factors, we conclude that the evidence was sufficient for a rational trier of fact to have found, beyond a reasonable doubt, that each image depicts "sexually explicit conduct."

Reversed and remanded.

LYNN, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.